UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| L.H. Jr., *et al* | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | 3:07-CV-300 TLS |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

On June 28, 2007 Plaintiff  L.H. Jr. (L.H.), filed his complaint in this Court.  On November 2, 2007, L.H. filed an opening brief, in which he asked this Court to enter judgment in his favor or to remand this matter to the Commissioner. On November 15, 2007, this matter was referred to the undersigned to conduct such proceedings as necessary to enter a report and recommendation.  On November 27, 2007, Defendant Social Security Administration (SSA) filed its response brief.  On December 6, 2007, L.H. filed his reply brief.  The following Report and Recommendation is based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.    PROCEDURE**

On December 16, 2003, an application for Disability Insurance Benefits was protectively filed on L.H.'s behalf.  (Tr. 42).  L.H. claims he is entitled to benefits pursuant to Title XVI of the Social Security Act.  See 42 U.S.C. §§ 416(i), 1381a.  On March 23, 2004, L.H.'s claim was initially denied and upon reconsideration on June 7, 2004.  (Tr. 42).

On December 11, 2006, L.H. appeared, with counsel, at a hearing before an

1

Administrative Law Judge (ALJ), who issued a denial of L.H.'s claim.  (Tr. 42-52).  The ALJ

found that L.H. had not engaged in substantial gainful activity.  (Tr. 45).  Further, the ALJ found

that L.H.'s impairment of sickle cell anemia was severe.  (Id.).  However, the ALJ found that

L.H's impairment did not meet or medically equal one of the listed impairments in 20 C.F.R.

app.1, subpart P. § 404.  (Id.).  Specifically, the ALJ found that the medical evidence showed

that L.H. had "very few severe vaso-occlusive crises since the year 2003."  (Id.).  Further, the

ALJ found that L.H.'s impairments did not functionally equal a listed impairment.  (Id.).  While

finding that L.H. had marked limitation in his health and physical domain, the ALJ found that

L.H. did not have marked or severe limitations in the requisite functional domains.  (Tr. 52).

Thus, L.H. was determined to be not disabled.  (Id.).

        L.H. appealed the ALJ's decision to the Appeal's Council.  (Tr. 4-6).  The Appeal's

Council denied review, and as a result, the ALJ's decision became the Commissioner's final

decision.  20 C.F.R. § 404.981, Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005).

Consequently, on June 28, 2007, L.H. filed a complaint in this Court seeking a review of the

ALJ's decision.  This Court may enter a report and recommendation in this matter based on its

referral order, 28 U.S.C. § 636(b)(1)(B), and 42 U.S.C. § 405(g).

**II.     ANALYSIS**

        A.      Facts

        As of the date of L.H.'s protective filing for benefits, L.H. was 6 years old.  (Tr. 45, 83-

85).  At the time of the ALJ's decision, L.H. was 9 years old.  (Tr. 45, 265).  L.H. alleges that he

has suffered from sickle cell disease since birth.  (Tr. 45, 86, 260). The following is a summary

of L.H.'s treatment, hospitalizations, emergency room visits, painful episodes, and frequent

absences from school, as recorded in the hospital records, opinions of medical experts, school reports, and hearing testimony contained in the administrative record.

    1. <u>Medical Evidence</u>

      a. Hospitalizations, Emergency Room Visits, and "Mild Painful Episode"[1]

  In 2001, L.H. was hospitalized twice for sickle cell pain crises, in June and July. (Tr. 199, 236, 254). In 2002, L.H. accessed the emergency room four times to treat ongoing pain. (Tr. 146-48, 152). In September 2003, L.H. was admitted to the hospital for treatment of an acute painful crisis and sickle cell anemia; he was treated with IV pain medications and supplemental oxygen. (Tr. 154-66, 199, 254, 286).

  In 2004, L.H. twice reported experiencing "mild painful episode[s]" at home, while attending hematology treatments. (Tr. 253-54). During these visits, L.H.'s mother reported that L.H. had four to five painful episodes at home each year. (Tr. 172, 236, 254). A month later,

---

[1] Sickle cell anemia is defined as:

> [A]n autosomal recessive disorder of hemoglobin in which mutation of the gene encoding the B-globin chain results in hemoglobin S, which has decreased solubility in the deoxygenated state and results in abnormal sickle-shaped enthrocytes (*sickle cells*). Homozygous individuals have 85 to 95 per cent sickle cells and have the full-blown syndrome with accelerated hemolysis, increased blood viscosity and vaso-occlusion, arthralgias, acute attacks of abdominal pain, ulcerations of the lower extremities, and periodic attacks of any of the conditions called sickle cell crises.

D<small>ORLAND'S</small> I<small>LLUSTRATED</small> M<small>EDICAL</small> D<small>ICTIONARY</small> 80 (31st ed. 2007).
Sickle cell crisis is defined as, "a broad term used to describe several different acute conditions occurring with sickle cell disease, including aplastic crisis, hemolytic crisis, and vaso-occlusive crisis." <u>Id</u>. at 439. A vaso-occlusive crisis is defined as: "a type of sickle cell crisis in which there is severe pain due to infarctions, which may be in the bones, joints, lungs, liver, spleen, kidney, eye, or central nervous system." <u>Id</u>.
Additionally, W<small>EB</small>MD describes a painful crisis as the following:

> Painful events are the most common symptom of sickle cell disease. They are periods of pain that happen when sickled cells get stuck in blood vessels and block the blood flow. These events usually cause pain in the hands, feet, belly, back, or chest.

WebMD, <u>Sickle Cell Disease-Topic Overview</u>, http://www.webmd.com/a-to-z-guides/sickle-cell-disease-topic-overview (last visited June 2, 2008).

between March 16-21, 2004, L.H. was hospitalized for a vaso-occlusive/hypoplastic crisis. (Tr. 189-216, 247, 288).  During L.H.'s hospitalization, L.H.'s mother reported to a hospital social worker that she was a student nurse and often took care of L.H.'s pain crises at home. (Tr. 195). The social worker instructed L.H.'s mother to contact the clinic to inform them of every painful episode in order to document and monitor L.H.'s pain crises. (Tr. 195-96).  Dr. George Maher's, D.O. (Dr. Maher), notes on March 16, 2004 noted that L.H. had incurred "multiple hospitalizations" for sickle cell disease. (Tr. 192). Later, on June 24, 2004, during another hematology treatment, L.H. again reported having pain and noted treatment at home via Tylenol with Codeine. (Tr. 249-50).

On January 14, 2005, during a hematology treatment, L.H. reported having had pain for a week which required missing school.  (Tr. 247-48). Similarly, on February 5, 2005, L.H. reported ongoing pain, rating between six and eight on a scale of ten, lasting for five days, and causing him to miss two days of school. (Tr. 246). Between April 25-28, 2005, L.H. was hospitalized for a vaso-occlusive pain crisis. (Tr. 236, 260). Soon thereafter, on May 3, 2005, Plaintiff again reported ongoing pain. (Tr. 240). Additionally, between September 30 and October 4, 2005, L.H. was hospitalized for another vaso-occlusive crisis, according to Dr. Maher's report. (Tr. 260).

Between January 26-27, 2006, L.H. was hospitalized for another vaso-occlusive crisis. (Tr. 236-37). Three months later, between April 29, 2006 and May 2, 2006, L.H. was hospitalized again for a sickle cell pain crisis. (Tr. 233-35, 289). Finally, between September 9-11, 2006, L.H. was hospitalized for another pain crisis. (Tr. 260, 289).

### b. Opinion of Treating Physician, Dr. George Maher, D.O.

4

On December 20, 2006, L.H.'s treating physician, Dr. Maher, summarized L.H.'s treatment in a letter to L.H.'s attorney. (Tr. 260).  Dr. Maher stated that L.H. was diagnosed with sickle cell anemia at birth and had been monitored for this condition on a continuing basis.  (Tr. 260, 274).  Dr. Maher noted that L.H. had been hospitalized for vaso-occlusive crises on eight occasions between July 2001 and September 2006 and opined that "[t]hese medical findings are consistent with the guidelines for impairment for a person with sickle cell anemia." (Tr. 260).

### c. Testimony of L.H.'s Mother, Lizzy Hudson

L.H.'s mother testified that L.H. has visited hematologist, Dr. Maher, for sickle cell treatment at least three times a year since L.H. was initially diagnosed. (Tr. 273-75). L.H.'s mother articulated that L.H.'s sickle cell disease caused vision and balancing problems, affected L.H.'s eating habits and caused pain. (Tr. 271-73, 276-77, 285).  L.H.'s mother testified that L.H.'s pain usually occurred in his chest and legs, and she explained that either L.H. would inform her when he was having pain or she would hear him moaning in his sleep. (Tr. 283-86). L.H.'s mother articulated that she took L.H. to the hospital when she could not control L.H.'s pain at home. (Tr. 172, 195, 254, 285-86, 289).

L.H.'s mother further testified that L.H. had below average grades because of numerous condition-related absences from school. (Tr. 282-83). L.H.'s mother stated that, due to his frequent absences, L.H. had to attend summer school each year in order to advance to the appropriate grade. (Tr. 283).  Additionally, L.H.'s mother noted that L.H. was accommodated through private tutoring, extra time in testing, and extra help from his mother at home. (Tr. 269-270).  L.H.'s mother expressed that she had considered home schooling for L.H. (Tr. 287-288).

### 2.     Educational Evidence

On February 9, 2004, L.H.'s teacher, Kristen Mumaw, indicated that L.H. frequently missed school due to numerous doctor's appointments and sickle cell attacks.  (Tr. 115-22). Although Ms. Mumaw noted that L.H. had no difficulty acquiring and using information, she noted that L.H. had an "obvious" problem completing his homework and in-class assignments and a "slight" problem working at a reasonable pace. (Tr. 116-17). On March 1, 2004, a school conference report was issued, establishing a strategy for dealing with L.H.'s frequent sickle cell crises.  (Tr. 184-88). The report listed several accommodations to assist L.H., including: excused absences, make-up time for assignments, and additional assistance from the teacher's aid. (Tr. 184-186, 270). On March 23, 2004, school records indicated that L.H. took thirty-seven absences between September 11, 2003 and March 23, 2004. (Tr. 145). Similarly, in March 2004, a hospital social worker noted sixty absences from school and requested homebound tutoring for L.H. (Tr. 195-96). Further, school records additionally indicated that L.H. took eleven absences between January 14, 2005 and April 29, 2006. (Tr. 225).

 B. <u>Standard of Review</u>

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error.  <u>See</u> 42 U.S.C. § 405(g); <u>Haynes v. Barnhart</u>, 416 F.3d 621, 626 (7th Cir. 2005); <u>Golembiewski v. Barnhart</u>, 322 F.3d 912, 915 (7th Cir. 2003).  Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  A reviewing court is not to substitute its own opinion for that of the ALJ's or re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion.  <u>Haynes</u>, 416 F.3d at 626; <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001); <u>Tally v. Barnhart</u>, 2007 WL 1238913, at *9 (N.D.Ill.

2007).  Thus, the ALJ must adequately articulate his analysis at some minimal level and must do

so in a manner that this Court can follow logically.  Zurawski, 245 F.3d at 889; Mayfield, 2003

WL 223310, at *4.  An ALJ's decision cannot stand if it lacks evidentiary support or an adequate

discussion of the issues.  Golembiewski, 322 F.3d at 915; Tally, 2007 WL 1238913, at *9.  This

Court is not permitted to re-weigh the evidence.  Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir.

2005); Tally v. Barnhart, 2007 WL 1238913, at *9 (N.D.Ill. 2007).  Alternatively, an ALJ's legal

conclusions are reviewed *de novo*.  Haynes, 416 F.3d at 626.

       C.       L.H.'s Motion for Summary Judgment or Remand

       To be entitled to benefits under 42 U.S.C. §§ 1381a, 1382, L.H. must establish

that he was "disabled."  See 42 U.S.C. §§ 416(i).  A child shall be considered disabled

under the Social Security Act if he is under the age of 18 and has:

> a medically determinable physical or mental impairment, which results in marked
> and severe functional limitations, and which can be expected to result in death or
> which has lasted or can be expected to last for a continuous period of not less than
> 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).  The Social Security regulations prescribe a sequential three-part

test for determining whether a child claimant is disabled.  20 C.F.R. § 416.924; Murphy v.

Astrue, 496 F.3d 630, 633 (7th Cir. 2007); Tally v. Barnhart, 2007 WL 1238913, at *7 (N.D.Ill.

2007).  At step one, the ALJ determines if the claimant engaged in any substantial gainful

activity. 20 C.F.R. § 416.924(b).  At step two, the ALJ determines if the claimant suffered from

any severe impairments, meaning that they cause more than minimal functional limitations. 20

C.F.R. § 416.924(c).  At step three, the ALJ determines if the claimant has an impairment that

meets, medically equals, or functionally equals the severity of a listed impairment. 20 C.F.R. §

416.924(d).  If the claimant is found to suffer from one or more severe impairments that meet or

are medically equivalent to a listing, the ALJ must enter a finding of disability. 20 C.F.R. §§ 416.924(d)(1), 404.1520(d); Pena ex rel. Pena v. Barnhart, 2002 WL 31527202, at *6-7 (N.D.Ill. 2002).  If not, the ALJ must then consider functional equivalence.  20 C.F.R. §§ 416.924(d); 416.926a.

To determine functional equivalence, the ALJ must evaluate the severity of the impairment in six domains: 1) acquiring and using information, 2) attending and completing tasks, 3) interacting and relating with others, 4) moving about and manipulating objects, 5) caring for oneself, and 6) health and physical well-being.  Murphy, 496 F.3d at 633.  A marked limitation is found when an impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i); see also Tally, 2007 WL 1238913, at *8 (defining a marked limitation as "more than moderate but less than extreme").  An extreme limitation is found when an impairment "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).  If the ALJ finds a marked difficulty in two domains of functioning or an extreme limitation in one, functional equivalence will be found to exist.  Tally, 2007 WL 1238913, at *8.

L.H. asserts four arguments attacking the ALJ's findings.  First, L.H. claims that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to consider and meaningfully discuss the objective medical evidence in regards to the issue of meeting listing 107.05A.  Second, L.H. contends that the ALJ failed to consider and meaningfully discuss the evidence of L.H.'s frequent absences in regards to the issue of functionally equaling a listing.  Third, L.H. postulates that the ALJ improperly dismissed the opinions proffered by his treating

physician. Fourth, L.H. argues that the ALJ improperly evaluated his mother's credibility regarding the severity of L.H.'s pain impairment.

1.      The ALJ's listing determination is not supported by substantial evidence

L.H chiefly argues the ALJ for failed to consider all the record evidence, ignoring or mis-characterizing evidence that supports a finding of disability, and neglecting to meaningfully discuss the evidence in relation to listing 107.05A.[2]  Additionally, L.H. asserts that the ALJ offered only a perfunctory analysis of the record evidence and failed to "build an accurate an logical bridge from the evidence to his conclusion." Instead, L.H. claims that the record evidence supports a finding that he meets, equals, or functionally equals listing 107.05A: sickle cell disease.[3]  In particular, L.H. asserts that the record evidence suggests that he has the requisite history of "[r]ecent, recurrent, severe vaso-occlusive crises (musculoskeletal, vertebral, abdominal)" to meet the listing's requirements. See 20 C.F.R. Pt. 404, Subpt. P., App. 1, §

---

[2] L.H. additionally argues that, by failing to consider all the evidence, the ALJ denied his due process rights. See Pl. Br. at 15-16. [Doc. 13]. **Add analysis to reject argument.**

[3] See 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 107.00 Hematological Disorders:
A. Sickle cell disease refers to a chronic hemolytic anemia associated with sickle cell hemoglobin, either homozygous or in combination with thalassemia or with another abnormal hemoglobin (such as C or F). Appropriate hematologic evidence for sickle cell disease, such as hemoglobin electrophoresis must be included. Vaso-occlusive, hemolytic, or aplastic episodes should be documented by description of severity, frequency, and duration. Disability due to sickle cell disease may be solely the result of a severe, persistent anemia or may be due to the combination of chronic progressive or episodic manifestations in the presence of a less severe anemia. Major visceral episodes causing disability include meningitis, osteomyelitis, pulmonary infections or infarctions, cerebrovascular accidents, congestive heart failure, genitourinary involvement, etc.
B. Coagulation defects. Chronic inherited coagulation disorders must be documented by appropriate laboratory evidence such as abnormal thromboplastin generation, coagulation time, or factor assay.

See also 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 107.05 Sickle cell disease. With:
A. Recent, recurrent, severe vaso-occlusive crises (musculoskeletal, vertebral, abdominal); or
B. A major visceral complication in the 12 months prior to application; or
C. A hyperhemolytic or aplastic crisis within 12 months prior to application; or
D. Chronic, severe anemia with persistence of hematocrit of 26 percent or less; or
E. Congestive heart failure, cerebrovascular damage, or emotional disorder as described under the criteria in 104.02, 111.00ff, or 112.00ff.

107.05A.

In his severe impairment finding, the ALJ briefly discussed the evidence of severe vaso-occlusive crises, citing broadly to three of the numerous exhibits submitted by L.H.  The ALJ's severe impairment finding included the following:

> The claimant was diagnosed with sickle cell anemia at birth and has been monitored for this condition on a continuing basis.  He has been treated at the hospital for vaso-occlusive crises on several occasions due to severe vaso-occlusive crises (Exhibits B1F, B2F, and B6F).

(Tr. 45).  Four sentences later, in a brief analysis devoid of evidentiary citations, the ALJ held that L.H. did not meet listing 107.05A.  The ALJ's listing analysis stated:

> The claimant does not have impairment that meets Listing 107.05A, because he does not have sickle cell anemia with recent, recurrent severe vaso-occlusive crisis. The medical evidence of record shows that the claimant has had *very few* severe vaso-occlusive crises since the year 2003.

(Tr. 45) (emphasis added).  The ALJ further summarized that "the claimant has been hospitalized once a year on the average, with the exception of the year 2006, where there are allegedly three hospitalizations." (Tr. 47).

 Although the ALJ mentioned three exhibits to support his finding that L.H. suffered from a severe impairment, this single citation is insufficient to suggest that the ALJ considered all of the record evidence in his listing determination. To begin, the ALJ's broad citation to three exhibits is neither specific enough to determine the precise documents relied on, nor is it inclusive of all the medical evidence in the record.  In particular, the ALJ's broad citation to three exhibits, each comprised of a significant amount of individual medical records, does not reference the specific documents therein that the ALJ relied upon to reach his conclusion. Similarly, the ALJ's cursory citation and analysis does not reference or discuss the numerous other exhibits in the record.  By neglecting to distinguish which evidence the ALJ found

10

persuasive within the exhibits cited and by failing to meaningfully discuss the additional record evidence, the ALJ potentially ignored a significant amount of relevant medical evidence in the record.[4] As a result, this Court can not determine whether the ALJ's decision is the rational result of a careful consideration of all the evidence. See Mayfield, 2003 WL 223310, at *4; Tally, 2007 WL 1238913, at *9 (The ALJ must consider all the relevant evidence, including that which does not support his conclusion).

The defects in the ALJ's analysis are strikingly similar to those in Scott v. Barnhart, 297 F.3d 589 (7th Cir. 2002).  In Scott, the ALJ was faulted for merely stating his conclusions and citing to a few exhibit numbers rather than meaningfully discussing the record evidence. See Id at 596. Criticizing the ALJ's method of analysis as "perfunctory," the Scott court found that it could not conduct a meaningful review of the ALJ's decision absent an actual discussion of the record evidence and an articulation of the specific reasons for accepting or rejecting the same. Id. Because of the ALJ's insufficient discussion of the evidence and his reasoning, this Court finds itself struggling with the same difficulty in conducting a meaningful review of the ALJ's decision.

Indeed, this Court finds the ALJ's failure to adequately consider and discuss all the record evidence particularly troubling given the amount of record evidence that could potentially support an alternative finding that L.H.'s impairment did indeed meet listing 107.05A.

---

[4] In its brief, the Commissioner argues that the ALJ properly excluded evidence from his analysis because, "some of the treatment was prior to [L.H.'s] alleged onset date; they [alleged severe crises] were not impatient hospitalizations or were routine follow-up; and [L.H.] was not diagnosed with a 'vaso-occlusive crisis'" See Def. Brief at 10. [Doc. 15]. However, without examining the validity of these arguments, the Commissioner's analysis appears nowhere in the text of the ALJ's opinion. As such, it is a post-hoc rationalization and is therefore insufficient to rectify the ALJ's insufficient discussion of the record evidence. See Golembiewski v. Barnhart, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principals of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ.").

Altogether, both the cited and uncited evidence aggregate into a significant number of crises in the record. For instance, the exhibits cited by the ALJ, exhibits B2F, B6F, and B13F, are replete with examples of hospital treatment for vaso-occlusive crises and severe pain. (See generally Tr. 93-104, 189-216, 233-254.)  These include six hospitalizations between 2001 and 2006, including: June 2001, July 2001, March 2004, April 2005, January 2006, and April 2006. (See Tr. 189-216, 236-37, 240, 254). Further, the exhibits cited by the ALJ evidence five reports by L.H.'s mother that L.H. also suffered painful episodes at his home.  (See Tr. 192, 195, 233-37, 240, 246-50, 253-54).  Moreover, the exhibits not cited by the ALJ evidence numerous additional painful episodes, including: four emergency room visits in 2002; three hospitalizations in September 2003, September 2005, and September 2006; and between four and five additional "crisis" at L.H.'s home. (See Tr. 154-66, 172, 260, 289-90).

Further, the ALJ seems to have improperly limited his evidentiary consideration of severe vaso-occlusive crises to those occurring after the claimant's SSI application date, improperly excluding additional evidence of relevant crises.  (See Tr. 45). While it is true in most Title XVI, Supplemental Security Income (SSI) cases that an ALJ can not determine that a disability onset date occurred prior to the date of the claimant's application, see S.S.R. 83-20, there is no authority preventing the ALJ from considering evidence of disability from the time period prior to the claimant's application date.  Indeed, such a rule would make it impossible for first-time applicants to establish the requisite 12-month duration requirement and would effectuate scant record evidence in nearly all SSI disability determinations. Instead, the case law is clear that the ALJ must consider *all* the relevant evidence in the record. Smith v. Apfel, 231 F.3d 433, 438 (7th Cir. 2000); Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997); Ray v. Bowen, 843 F.2d 998, 1002 (7th Cir. 1988) (quoting Garfield v. Schweiker, 732 F.2d 605, 610

(7th Cir. 1984)) (arguing "all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand should be considered and discussed by the ALJ."). Without a more meaningful analysis from the ALJ regarding all the evidence, this Court is left with a record that does not permit it to engage in meaningful review of the ALJ's decision. See Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000); Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002).

In addition to the ALJ's failure to consider and weigh all the record evidence, the ALJ failed to adequately articulate how the record evidence supported his findings. In a one sentence analysis, the ALJ held that L.H. did not meet listing 107.05, reasoning that the record evidence indicated only "very few" of the requisite vaso-occlusive crises. See Tr. 45. However, nowhere in his opinion did the ALJ specify the number of crises he identified in the record nor did he explain why the record was properly characterized as evidencing only a very few crises. Instead, the ALJ's analysis is vague and insufficiently explained; and, as a result, it is not sufficient to support the ALJ's conclusion that L.H. did not meet a listing. Without some explanation of the number of crises that the ALJ identified in the record and a logical bridge explaining why the evidence is properly characterized as "very few" and insufficient to meet listing 107.05, this Court cannot uphold the ALJ's listing decision. In short, because the ALJ neglected to explain how he considered and weighed the record evidence and failed to articulate how his evidentiary findings supported his conclusions, it is impossible to determine whether the ALJ's decisions are reasonable and substantially supported by the record evidence. See Clifford, 227 F.3d at 872 (The ALJ must articulate a legitimate reason for his decision and build an accurate and logical bridge from the evidence to his conclusion.); Zurawski v. Halter, 245 F.3d 881, 889 (7th Cir. 2001) (The ALJ must logically explain the reasoning behind his decision to deny benefits).

In sum, this Court is unable to discern whether the ALJ's listing decision is the rational

13

result of a full consideration of all the relevant medical evidence and, accordingly, lacks a sufficient basis upon which to uphold the decision.  See Zurawski, 245 F.3d at 889. Given the significant amount of evidence that might favor a finding that L.H. meets or medically equals a listing, without some indication that the ALJ considered all the relevant evidence and a reasonable explanation of why he excluded that which did not support his decision, this Court can not uphold the ALJ's listing decision as substantially supported.  See Clifford, 227 F.3d at 872; Scott, 297 F.3d at 595; Deal v. Barnhart, 2003 WL 22247185, at *18 (N.D.Ill. 2003). Further, although the ALJ may have good reason for excluding such evidence or for finding it insufficient to support a finding that L.H. meets a listed impairment, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" in order to permit a meaningful review by this Court.  See Clifford, 227 F.3d at 872; Scott, 297 F.3d at 595.

On remand, the ALJ must conduct a reevaluation of *all* the record evidence, considering L.H.'s proffered medical evidence and articulating specific reasons for accepting or rejecting it. After doing so, the ALJ must sufficiently articulate his factual findings in light of Listing 107.05, logically and throughly explaining the path from the facts to his conclusion. Accordingly, should the ALJ choose to rely on reasoning similar to that of his previous opinion, the ALJ must articulate what is meant by his finding of "very few" severe vaso-occlusive crises and explain how the record evidence, considered *in toto*, reasonably supports this conclusion.

2.      The ALJ's determination that L.H.'s severe impairment does not

functionally meet a listing is not supported by substantial evidence.

Additionally, L.H. argues that the ALJ failed to consider and meaningfully discuss evidence which shows that L.H.'s impairment functionally equals a listing. In particular, L.H. argues that the ALJ failed to consider evidence which showed that L.H.'s grades suffered on

14

account of numerous impairment-induced absences. L.H. argues that this evidence indicates at least a marked limitation in the functional domain, Acquiring and Using Information. See 20 C.F.R. § 416.926a(g).  After a review of the ALJ's decision, this Court agrees that the ALJ failed to meaningfully consider and discuss this evidence.

In a three sentence analysis, discussing L.H.'s impairment in relation to the Acquiring and Using Information domain, the ALJ stated,

> [t]he claimant has no limitation in acquiring and using information.  There is *no evidence or allegations* that the claimant has any difficulty acquiring and using information. The claimant's mother reported that the claimant's difficulties with grades are a result of his absence from school.

(See Tr. 48) (emphasis added).

Given the abundance of evidence contrary to the ALJ's reasoning that there is "no evidence or allegations that [L.H.] has any difficulty acquiring and using information," the ALJ's cursory conclusion that L.H. is not limited in the domain of Acquiring or Using Information cannot reasonably be said to be supported by substantial evidence.  While the ALJ is not required to address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind his decision to deny benefits. See Zurawski v. Halter, 245 F.3d 881, 889 (7th Cir. 2001).

To begin, the ALJ's brief analysis, stating that there is "no evidence or allegations" that L.H. has difficulty in the domain of Acquiring and Using Information, is contrary to the record evidence as a whole.  The record indicates that L.H. missed numerous school days because of his illness.  (See Tr. 121, 145, 225) (evidencing thirty-seven condition-related absences between 2003-2004 and eleven absences between 2005-2006). However, nowhere in his opinion, did the ALJ even minimally discuss whether L.H.'s numerous absences from school have a limiting

15

effect on L.H.'s ability to acquire and use information.  Such an omission is concerning given

that the record is replete with examples of L.H.'s requiring academic accommodations including:

excused absences, make-up time for assignments, and additional assistance from the teacher's

aid. (See Tr. 184-188, 270).  Further, there is no discussion of evidence noting that L.H. had to

go to summer school to maintain the appropriate grade level, that a hospital social worker

requested homebound tutoring on L.H.'s behalf, and that L.H.'s parents briefly considered home

schooling. (See Tr. 195-96, 283, 287-88).

       This evidence is clearly relevant to the issue of whether L.H. had difficulty acquiring and

using information, yet the ALJ failed to sufficiently articulate why it was either accepted or

rejected as part of the ALJ's analysis. Furthermore, this Court cannot say this error is harmless

because all of this evidence suggests that the ALJ's determination that there was "no evidence or

allegations that the claimant had difficulty acquiring and using information" is flatly contradicted

by this evidence in the record.  The ALJ may not have given this evidence much weight, but

without some discussion of this evidence, this Court can only guess that ALJ reached that

conclusion.  See Clifford, 227 F.3d at 872 (7th Cir. 2000); Zurawski, 245 F.3d at 889.

Ultimately, this Court can only assume it was ignored by the ALJ, which is insufficient to allow

for a meaningful review and warrants a remand.  See Zurawski,245 F.3d at 889; Mayfield v

Barnhart, 2003 WL 223310, at *4 (N.D.Ill. 2003) ("[T]he ALJ must consider all relevant

evidence and may not select and discuss only that evidence that favors his ultimate conclusion");

Tally v. Barnhart, 2007 WL 1238913, at *10-12 (N.D.Ill. 2007).

       Accordingly, because the ALJ failed to articulate the weight given to evidence of L.H.'s

frequent absences and because the ALJ failed to adequately discuss the limiting impact these

absences had on L.H.'s ability to acquire and use information, this Court cannot uphold the

16

ALJ's functional equivalence determination.  This Court does not suggest that the ALJ's

conclusion was incorrect, but only that greater elaboration is necessary to ensure a full and fair

review of the evidence.  Id.  On remand, the ALJ must consider and discuss the frequent

absences that L.H. incurred due to his sickle cell disease, must discuss whether these absences

had a limiting effect on L.H.'s ability to acquire and use information, and must logically explain

his analysis in a manner sufficient for this Court to ascertain the path from the facts to the ALJ's

conclusion.

> 3.    The ALJ's determination that the opinion of L.H.'s treating physician is
>        not entitled to controlling weight is not supported by substantial evidence.

L.H. additionally argues that the ALJ improperly rejected the opinion of his treating

physician, Dr. Maher.  In response, the Commissioner argues that the ALJ's rejection was

justified because some of Dr. Maher's evidence of hospitalizations could not be authenticated

with other evidence in the record.[5]

An ALJ is to give a treating physician's opinion controlling weight if it is well supported

by medically acceptable clinical and laboratory diagnostic techniques and if it is consistent with

other substantial evidence in the record.  Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006);

Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 416.927(d)(2); S.S.R. 96-2p.

More weight is generally given to the opinion of a treating physician because he is more familiar

with the claimant's conditions and circumstances.  20 C.F.R. § 416.927(d)(2); Clifford, 227 F.3d

---

[5]At L.H.'s disability hearing, on December 11, 2006, the ALJ indicated that it was necessary to obtain the opinion of L.H.'s treating physician before ruling on the issue of meeting or equaling listing 107.05, sickle cell anemia.  (See Tr. 290-91). Nine days later, on December 20, 2006, Dr. Maher submitted a letter (Tr. 260).  This Court rejects the Commissioner's argument that Dr. Maher did not offer an opinion regarding the issue of equivalence.  Dr. Maher's letter appears to be a direct response to the ALJ's expressed desire that L.H.'s treating physician be re-contacted in order to assist the ALJ in determining the issue of equivalence with listing 107.05.

at 870.  Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record.  Clifford, 227 F.3d at 870.  When evidence in opposition to the presumption is introduced - when "well supported contradicting evidence" is submitted - the rule drops out and the treating physician's evidence becomes just one more piece of evidence that the ALJ must consider.  Hofslien, 439 F.3d at 376-77.  While the ALJ is not required to award a treating physician controlling weight, the ALJ must, at a minimum, sufficiently articulate his reasoning for not doing so.  Id.

The ALJ stated:

[a]s for *opinion* evidence, in accordance with SSR 96-6p, the Administrative Law Judge finds that the medical report submitted by the claimant's treating physician, Dr. Maher, is not supported by the objective medical evidence of record. Specifically, there are not *any* hospital records in the evidence of record to support the frequent hospitalizations referenced in the doctor's letter.  Therefore, the undersigned does not give controlling weight to Dr. Maher's report.

(Tr.47) (emphasis added).

On its face, the ALJ's rationale for rejecting Dr. Maher's opinion seems to be an appropriate finding.  The ALJ considered the number of hospitalizations proffered by Dr. Maher to be unsupported by hospital records, and as a result, the ALJ found that Dr. Maher's opinion was inconsistent with medical evidence in the record and declined to give it controlling weight. See Clifford, 227 at 870 (Medical evidence may be discounted if it is not well supported or inconsistent with other evidence in the record).  However, the record reveals that the ALJ's reasoning itself is not supported by substantial evidence.

The ALJ's conclusion that there are "not any hospital records in the evidence to support the frequent hospitalizations referenced in Dr. Maher's letter" is directly contradicted by the evidence.  All but two of the eight hospitalizations listed by Dr. Maher can be independently

18

verified with the submitted hospital records.[6]   Further, of the two hospitalizations not duplicated by hospital records, one can be independently verified in the testimony of L.H.'s mother. (Tr. 289).  As a result, only one of the hospitalizations referenced by Dr. Maher can not be verified elsewhere in the record. Additionally, Dr. Maher did not include the June 2001 hospitalization in his letter, which finds citation in multiple hospital records.  Including this hospitalization, the total number of verifiable hospitalizations in the record is at least eight, consistent with the number of crises proffered in Dr. Maher's letter.  (Tr. 199, 236, 254).  Given that a significant number of verifiable hospitalizations mentioned in both Dr. Maher's letter and the submitted hospital records, the ALJ's rationale that there are "no" hospital records to substantiate the frequency of hospitalization clearly contradicts the record, and as a result, it is not reasonable.

In conclusion, the ALJ's rationale for not affording Dr. Maher's opinion controlling weight is not supported by substantial evidence as his reasoning is a stark contradiction with the evidence in the record.  The ALJ may have other reasons for rejecting Dr. Maher, but if so, he did not specifically articulate those reasons.  Accordingly, on remand, the ALJ must reevaluate what weight to give Dr. Maher's findings, and the ALJ must articulate reasoning that is consistent with the record evidence before rejecting Dr. Maher's opinion.

4.    The ALJ's determination that the testimony of L.H.'s mother is not credible is not supported by substantial evidence.

Finally, L.H argues that the ALJ's finding that the testimony of L.H.'s mother is not credible is not supported by substantial evidence.  Because an ALJ is in a special position where

---

[6]The hospitalization dates cited by Dr. Maher and the  corresponding record citations are as follows: July 23-28, 2001, Tr. 236, 254; September 21-24, 2003, Tr. 154-166, 199, 254, 286; March 16-21, 2004, Tr. 189-216; April 25-28, 2005, Tr. 236, 260; January 26-27, 2006, Tr. 236-37; April 29-May 2, 2006, Tr. 233-35.

he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003); Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).  However, as a bottom line, Social Security Ruling 96-7p requires an ALJ to consider the entire case record and articulate specific reasons to support his credibility finding. Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003); Steele v. Barnhart, 290 F.3d 936, 941-42 (7th Cir. 2002).  While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an the individual's allegations have been considered or that the individual's allegations are not credible. Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004); Golembiewski, 322 F.3d at 915; Zurawski, 245 F.3d at 887; S.S.R. 96-7p.  Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms.  Zurawski, 245 F.3d at 887; S.S.R. 96-7p.

This Court finds the ALJ's conclusion that L.H.'s mother's testimony was not fully credible is not supported by substantial evidence because the ALJ did not rely on all the objective medical evidence in the record.  Regarding the credibility of L.H.'s mother, the ALJ found, in part:

> The Administrative Law Judge finds that the claimant's mother's testimony is not fully credible.  The claimant's mother testified that the claimant is hospitalized on a quarterly basis however; the medical evidence reveals that the claimant was hospitalized once during 2003; once during 2004; and once during 2006.  Even if Dr. Maher's testimony were supported by medical evidence, his statement regarding the hospitalizations of the claimant reveal that the claimant has been hospitalized once a year on the average, with the exception of the year 2006, where there are allegedly three hospitalizations.

(Tr. 47).  This Court cannot determine whether the ALJ considered all the evidence in making his conclusion.  See Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003) (The ALJ

must consider the entire case record and articulate specific reasons to support his credibility finding); Steele v. Barnhart, 290 F.3d 936, 941-42 (7th Cir. 2002); SSR 96-7p.

The ALJ dismissed the testimony of L.H.'s mother because he believed it was not in accordance with the record medical evidence, in particular, because the ALJ thought that L.H.'s mother did not accurately represent the number of hospitalizations in the record.  (Tr. 47.) However, as expressed in detail above, this Court is not convinced that the ALJ considered all the record and was, himself, unfamiliar with the number of hospitalizations in the record evidence. See supra Parts II.C.1, II.C.2 (the ALJ failed to consider and discuss all the evidence when assessing medical and functional equivalence).  It follows then, that it is therefore impossible for this Court to uphold the ALJ's credibility determination, so long as the primary rationale for the ALJ's conclusion is a comparison between the ALJ's understanding of the record evidence and the testimony of L.H.'s mother.  In other words, this Court finds that the ALJ could not properly argue that the testimony of L.H.'s mother was an inaccurate representation of the record before satisfying the law's requirements to consider all the record evidence and discuss the weight given and sufficiently articulate the rationale linking the facts to the ALJ's conclusion.

Without assurance that the ALJ has taken these basic steps, this Court can not determine whether the ALJ's credibility determination is supported by substantial evidence in the record and, accordingly, lacks a sufficient basis upon which to uphold the ALJ's credibility decision. See Golembiewski, 322 F.3d at 915; Steele, 290 F.3d at 941-42; SSR 96-7p.  On remand, the ALJ must conduct a reevaluation of the testimony of L.H.'s mother, and the ALJ must first consider all the record evidence and sufficiently articulate his understanding of that record before drawing comparisons between the record and the testimony of L.H.'s mother.

**III.   CONCLUSION**

For the reasons stated, the ALJ's findings are not supported by substantial evidence.

Therefore, this Court **RECOMMENDS** that L.H's motion for remand be **GRANTED** [Doc. No.

13] and the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence

four of 42 U.S.C. § 405(g).

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDERED**.

**SO ORDERED.**

Dated this 6th Day of June, 2008.


                                        S/Christopher A. Nuechterlein
                                        Christopher A. Nuechterlein
                                        United States Magistrate Judge

22